C64FSHEC

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK

2  ------------------------------x

3  LATRICE DARLENE SHEPHERD,

4          Plaintiff,

5      v.                11 CV 7634 (RJS)

6  BCBG MAX AZRIA,

7          Defendant.

8  ------------------------------x
                           New York, N.Y.

9                           June 4, 2012
                           3:00 p.m.

10

11  Before:

12             HON. ANDREW J. PECK,

                           District Judge

13

14               APPEARANCES

15  LATRICE DARLENE SHEPERD
      Plaintiff pro se for Plaintiff

16  LITTLER MENDELSON
      Attorneys for Defendant

17  ERIC A. SAVAGE, ESQ.

18

19

20

21

22

23

24

25

C64FSHEC

1          (Case called)

2          (In open court)

3          THE COURT:  Let's see where we are in this case from

4    the parties' points of view.  Let's start with the defendants.

5          MR. SAVAGE:  Good afternoon, your Honor.  Eric Savage

6    of Littler Mendelson and my colleague Morgan Matson.

7          There are a few open items we'd like to raise to the

8    Court today, in no particular order we have as follows.  I

9    guess I'll start with the most important item.  We have, and

10   Ms. Sheperd has already seen an amended answer and counterclaim

11   that we would like to file and serve.  The reason is this.

12         We took Ms. Sheperd's deposition last Thursday, the

13   30th of May.  During that deposition Ms. Sheperd testified that

14   in early 2009 she had a conversation with the company's human

15   resources manager, a woman named Carla Macias, about various

16   aspects of her, meaning plaintiff's, complaints about what was

17   going on in the store where she was working.  California --

18   Ms. Mecias lives and works in California and when the

19   conversation took place Ms. Sheperd was here in New York,

20   Ms. Mecias was in California.  California is a two party

21   consent state.  It refers to both parties in a conversation by

22   telephone to consent to the taping of their conversation.

23   During deposition Ms. Sheperd testified that she taped the

24   telephone call and was quite emphatic that she did not advise

25   Ms. Mecias that she was in fact taping it.  That is illegal and

C64FSHEC

1    in fact subjects Ms. Sheperd to fine, if not actual criminal

2    liability under California law.

3              So on Friday we sent to Ms. Sheperd a proposed amended

4    answer and counterclaim identifying those issues, which of

5    course we had no way of knowing until we took her deposition,

6    and seeking to, asking her whether she would consent to our

7    filing that, to which she has objected.

8              In addition, we learned during that --

9              THE COURT:  Let me interrupt one minute there.  It may

10   be a criminal matter in California.  Is there a private right

11   of action under the California statute?

12             MR. SAVAGE:  Yes, there is, and as we pled the statute

13   in the answer and counterclaim, it does provide for not a huge

14   amount but for some amount of monetary relief to the offended

15   party, which is us.

16             THE COURT:  Well, is the offended party you or is it

17   Ms. Macias?

18             MR. SAVAGE:  Well, it's actually to Ms. Macias in her

19   capacity as a representative of the company because she was

20   being called in her capacity as a human resource director of

21   BCBG.  What we learned in addition to that is that we believe

22   sometime in 2010 after Ms. Sheperd had already gone to the EEOC

23   and at some point she may or may not have been discussing the

24   matter with counsel, that recording was destroyed.  It was on,

25   Ms. Sheperd testified that it was recorded on her BlackBerry,

C64FSHEC

1    at some point she switched from a BlackBerry to an iPhone and

2    the conversation was lost.  She testified that there is now no

3    way of retrieving it.  We obviously want to assert that as an

4    affirmative defense and just no state secrets here, when we

5    submit the letter on or before July 18 on a summary judgment

6    motion we're also going to be seeking a motion for spoliation

7    sanctions.

8            The other thing we want to assert in the answer which,

9    again, we had no way of knowing until the afternoon of the 30th

10   when this information came out during the deposition is an

11   after acquired evidence defense, to the effect that had the

12   company known of the undisclosed taping by Ms. Sheperd of her

13   conversation with Ms. Mecias in her capacity as an employee of

14   the company, the human resources director of the company, would

15   have been justified in terminating her at that moment.

16           So that's issue number one.  Issue number --

17           THE COURT:  Before you get to issue number two, let me

18   hear from Ms. Sheperd as to her position on the amendment, not

19   whether it's all true or anything else, but why the amendment

20   should or should not be allowed at this time.

21           MR. SAVAGE:  I have a copy for your Honor if the Court

22   wants to see it.

23           THE COURT:  Hand it up, yes.  Ms. Sheperd?

24           MS. SHEPERD:  Your Honor, the reason that, I did speak

25   with human resources.  I don't particularly remember if it was

C64FSHEC

```
1    in the early part of 2009, I don't remember at this point.

2    However, I did speak with the human resources manager with

3    regards to my concern for discrimination as an employee for

4    BCBG.  I felt that it was necessary to tape our conversation.

5    I didn't know that I was doing something against the law.  I

6    just needed -- I felt that I needed something to refer back to

7    in case I ended up in court.  I'm a resident of New York.  How

8    can -- I don't necessarily understand how I could be liable or

9    responsible for --

10        THE COURT:  I'm not sure that it doesn't violate the

11   telephone company tariffs in New York either, but the question

12   is this, not what is your defense to this, but is there any

13   reason this shouldn't become part of the case and then if

14   you're right that you had no reason to know or that this

15   statute does not create a private right of action or that if it

16   does it's for Ms. Mecias personally and not for BCBG or

17   whatever else it may be, the question is why should the Court

18   not allow it so that the entire case, whatever issues there

19   are, are not in front of the trier of fact at the appropriate

20   time?

21        MS. SHEPERD:  The Court shouldn't allow it because it

22   has nothing to do with the issue at hand, the issue that I

23   incurred when I was working in the company.

24        THE COURT:  But anything to do with your working at

25   the company is part of the whole package here.  If that's the
```

C64FSHEC

```
 1   only basis for the objection, that and you didn't know it would

 2   violate California law, then I'm going to be inclined to allow

 3   the answer and counterclaim.

 4          MS. SHEPERD:  However, your Honor, you didn't allow me

 5   to submit an amended complaint.

 6          THE COURT:  It was because it didn't state a claim.

 7   The question is you were, as I recall, trying to assert a class

 8   action and various other things that were not appropriate as a

 9   matter of law.  All right?  Any other reasons with respect to

10   this?

11          MS. SHEPERD:  No.

12          THE COURT:  All right.  Permission is granted to file

13   the amended answer and counterclaim.

14          MR. SAVAGE:  Thank you.  We'll have this filed on the

15   records of the Court by tomorrow, if not earlier than that.

16          THE COURT:  All right, what else?

17          MR. SAVAGE:  Issue number two.  After the deposition

18   was concluded on Thursday we put together a list of items that

19   we wanted Ms. Sheperd to produce to us, items she identified or

20   discussed during the deposition.  We submitted that to her by

21   Federal Express, certified mail and e-mail by letter dated

22   May 31.  I have a copy for the Court, and since we are bumping

23   up against a June 14 discovery cutoff I would like an order

24   that these materials be produced to us by no longer than

25   Monday, June 11.
```

C64FSHEC

```
1          THE COURT:  Were they requested prior to the

2     deposition?

3          MR. SAVAGE:  Some of them absolutely were requested

4     prior to the deposition and we have a copy of, I think the

5     Court's already seen at least in part the document requests and

6     after the document requests were responded to by letter dated

7     May 18 of which we also have a copy, we identified certain

8     things which were missing, but everything that is in the May 31

9     letter was either requested before the deposition or it came up

10    as a result of testimony during the deposition of which we had

11    no idea beforehand.  And I have a copy for the Court if the

12    Court wants to see this.

13         THE COURT:  You can hand it up.  I'll defer discussion

14    of that.  What else?

15         MR. SAVAGE:  Issue number 3, your Honor.  During the

16    deposition Ms. Sheperd identified for us by general description

17    only the fact that she had seen some form of psychologist or

18    psychiatrist.  All that she could remember at that point, and I

19    have no reason to doubt her, was that his office was on the

20    upper east side somewhere, which this being Manhattan doesn't

21    eliminate a lot of people.

22         We asked her to sign authorization of the disclosure

23    of those records which we would use once we got the name and

24    that's part of what's included in the letter of May 31.  She

25    did not want to sign them at that point.  I represented to her
```

C64FSHEC

 1     on the record as an officer of the Court, that we had no

 2     interest in using any authorization that she signed for any

 3     purpose other than the particular psychologist or psychiatrist.

 4     I told her we would bring them, bring the authorizations to

 5     Court today for execution.  I'd like to have them executed.

 6     There are actually three of them.

 7              THE COURT:  Let's figure out, do you know the name and

 8     address of the doctor or have any records?

 9              MS. SHEPERD:  I do have -- I'm sure I have records

10     somewhere, your Honor.  I don't necessarily remember the name.

11     It was a woman on the upper east side.  I was referred to that

12     psychologist or psychiatrist, I can't remember, by New York

13     Presbyterian.  So I'll have to contact New York Presbyterian to

14     speak with the person who saw me there to get the information.

15              THE COURT:  That's going to take forever.  Is there a

16     claim for emotional distress damages in this case?

17              MS. SHEPERD:  Yes.

18              MR. SAVAGE:  And in fact, your Honor, number 9 on that

19     letter of May 31 letter that I just handed up to the Court does

20     request the name and address of the mental health specialist

21     that you saw from June 2009 until December 2009 and whom you

22     testified was located on the upper east side.  This is also to

23     remind you that once the name and address have been provided,

24     you have agreed to sign an authorization for the release of

25     protected health information.

C64FSHEC

1          We asked during the deposition whether Ms. Sheperd had

2     in her home any insurance forms, checks, canceled checks or

3     other records and asked her to check those to determine whether

4     the name of this person could be found.  Obviously, if

5     Ms. Sheperd is going to be pressing an emotional distress,

6     mental, emotional and mental distress claim, we certainly need

7     to find out who that is and get a copy of what I gather is her

8     records.

9          THE COURT:  Okay.  Well, let me back up one minute,

10    then.  Ms. Sheperd, did you do your 26A mandatory disclosure on

11    or about May 15th?  And I see Mr. Savage shaking his head yes.

12         MR. SAVAGE:  Yes.

13         THE COURT:  And I take it you did not list the name of

14    any psychiatrist or psychologist or the like in that?

15         MS. SHEPERD:  I didn't list the additional.  I listed

16    the one -- I saw one for three months at New York Presbyterian.

17    Apparently when you're checked in there you're seen by someone

18    for three or four months, then they refer you outside.  So I

19    forgot about the woman I did see outside.  I was terminated

20    shortly thereafter, so I didn't have insurance, I never saw her

21    again.

22         MR. SAVAGE:  Your Honor, I can represent that in the

23    26A disclosure in which Ms. Sheperd absolutely did provide,

24    there's no medical provider of any sort identified, either by

25    name, phone number or anything else.  There's nobody.  There's

C64FSHEC

1   a series of alleged witnesses ---

2          THE COURT:  Do either of you have a copy of the 26A

3   here?

4          MR. SAVAGE:  I don't believe we do.  There were six

5   people listed.  One was a former human resources person from

6   BCBG.  There were four other employees, one other person whose

7   name I forget.  None of them was a doctor, I'll tell you that.

8          THE COURT:  But they could be a psychologist or social

9   worker who is not an M.D. or PhD.

10          MR. SAVAGE:  We went over the Rule 26.  In the

11   deposition I asked Ms. Sheperd who each of these people were.

12   None of them were treating physicians, psychologists,

13   psychiatrists, social workers, anything like that.

14          THE COURT:  Ms. Sheperd, you said you did put

15   someone's name down, he said you didn't.  Neither of you have

16   the paperwork here, which makes it impossible for me to do

17   anything.  If you did not list any treating

18   medical/psychological, then my inclination would be to say we

19   just convert this back to a plain vanilla claim, which is to

20   say you're not allowed to say you saw doctors.  You say, you

21   know, I was distressed because I was treated unfairly, fired,

22   whatever, and the jury awards you whatever they can award you

23   under that up to the maximum allowed under New York law.

24          MS. SHEPERD:  Okay.  Your Honor, maybe I didn't put it

25   on 26A, but what I provided for them in their interrogatories

C64FSHEC

1    were where I was seen, who I was seen by, the social worker

2    that I saw for three months while on disability.  The only

3    person that I did not tell them was who I was referred to once

4    I was discharged from New York Presbyterian.  I signed a

5    release for New York Presbyterian.  I also signed a release for

6    the general practition doctor.  The only person they don't have

7    is who I was referred to once I was no longer able to see the

8    social worker at New York Presbyterian, which was after, once

9    they discharged me from, once I was off of disability and

10   returned to work I had to see someone else.  That's the only

11   person who they don't have record of.  And I refused to sign

12   the release because there was no name on there.

13           THE COURT:  That's not the issue.

14           MR. SAVAGE:  You know, your Honor, again, my bad, we

15   did not bring the interrogatory answer.  There was no doctor

16   listed.  In fact --

17           THE COURT:  Okay.  Stop, stop.  Did you get a release

18   for New York Presbyterian?  Yes or no.

19           MR. SAVAGE:  Yes, we did get a release from New York

20   Presbyterian.

21           THE COURT:  And you knew that was a psychological

22   provider or no?

23           MR. SAVAGE:  We knew it was a hospital.  We knew

24   Ms. Sheperd received some type of care.  I don't think it's

25   entirely clear what she had.

C64FSHEC

1          THE COURT:  It's very hard for me to rule on this when

2     you don't give me the documents and you and Ms. Sheperd have

3     totally different views of what was in the documents.  So at

4     this point do whatever you need to do to find out the name of

5     this person and provide that information and a completed

6     release as promptly as possible to Mr. Savage and we'll go from

7     there.

8          MR. SAVAGE:  I have the releases here for Ms. Sheperd

9     to sign.

10          THE COURT:  But she's not going to sign them in blank

11     and I'm not going to order her to.  Because it's useless unless

12     she figures out and figures out promptly the name of the doctor

13     and if you want to make an application in writing that attaches

14     the 26A, the interrogatories, everything you've got from her

15     that might reveal whether you have prior to the deposition had

16     any reason to know she was getting any psychological treatment,

17     if the answer is no, I will preclude it.  If the answer is yes,

18     she did tell you, however inartfully, then I will not preclude

19     it and hopefully you'll get this information about the other

20     treating psychologist.

21          MR. SAVAGE:  With respect to that, your Honor, and I

22     recognize the Court's point of view, the only concern is this.

23     We have a June 14 discovery cutoff, and we're all here today.

24     If Ms. Sheperd gets ahold of me Wednesday, Thursday, Friday

25     this week --

C64FSHEC

THE COURT:  The short answer is, you know, had you had
the information even at the deposition on May 30,the odds of
you getting that documentation from a doctor without hitting
the doctor over the head with a two-by-four, usually in the
form of a Court order, is slim to none.

MR. SAVAGE:  Agreed, but at least if I have the signed
materials here that once Ms. Sheperd gives me the name we can
get them to the doctor promptly rather than my having to send
them by Federal Express to Ms. Sheperd --

THE COURT:  Then give her all the blank releases and
when she gets the name of the doctor she'll fill it out and
send it back to you.

MR. SAVAGE:  I will do that.  Just so we're clear,
there are actually three forms.  One is entitled authorization
for release of protected health information, it's a one-page
document.  The second one, we need the first two both signed,
is entitled authorization for release of health information
pursuant to HIPAA and it has the New York State seal in the
upper left-hand corner.  The third one is a New York
Presbyterian release and Ms. Sheperd has already signed one,
but in case this psychiatrist happens to be affiliated with New
York Presbyterian, belt and suspenders I would rather have this
signed so I don't need to worry about getting a third one
signed afterwards.  So I'm going to hand this over to
Ms. Sheperd now.

C64FSHEC

1          THE COURT:  Good.

2          MR. SAVAGE:  The only other question I have, your

3    Honor, is there is a June 18 deadline for us to submit a letter

4    as to summary judgment.  Now, this may sound like a silly

5    question, but I don't know two things.  One, does that letter

6    go to your Honor, does it go to Judge Sullivan, does it go to

7    both?

8          THE COURT:  It goes to me since for better or worse

9    I've got the motion.

10         MR. SAVAGE:  Then the second issue is on that letter

11   do we need to say anything other than we plan to file a motion?

12         THE COURT:  No.  And can you tell me right now and we

13   can skip that trigger, if you already know you're filing a

14   motion you could tell me what you think it's going to be about.

15   I don't really have authority to tell you not to file a motion,

16   but I can certainly tell you it's not going to be well

17   received, and you can read the tea leaves from that, if it is

18   not going to be well received.

19         MR. SAVAGE:  Obviously we're going to file a motion.

20   It's a two-part motion seeking to dismiss the entire case and

21   in the alternative that the Court does not dismiss the case

22   seeking spoliation damages on the issue of the recording.

23         THE COURT:  The spoliation issue is probably pretty

24   simple.  I assume Ms. Macias knows what she said and the

25   appropriate sanction is at best is that her statement of what

C64FSHEC

 1    went on in that conversation can't be contradicted.

 2                MR. SAVAGE:  Right.

 3                THE COURT:  You're certainly not getting more than

 4    that, and that may be something that Ms. Sheperd doesn't

 5    oppose.

 6                MR. SAVAGE:  And the third, we're going to be

 7    attacking the case for failure to prove a case and failure to

 8    meet the standards for Title VII or New York State or New York

 9    City discrimination law either for failure to state a prima

10    facie case or failure to establish any kind of pretext or any

11    of the requirements for a claim for harassment.

12                THE COURT:  What about the retaliation claim?

13                MR. SAVAGE:  We're going to seek to dismiss that, too.

14    There was no retaliation.

15                THE COURT:  But is the timing such that after a

16    complaint about discrimination her termination followed shortly

17    thereafter?

18                MR. SAVAGE:  Well, obviously timing is certainly a

19    factor that we know courts look at, but the record will

20    establish, we think, that the issues that had been raised about

21    Ms. Sheperd's performance in her job were such that it

22    overcomes any inference that may be generated by virtue of the

23    timing issue.

24                THE COURT:  I'm somewhat dubious, particularly on the

25    retaliation claim without even hearing from Ms. Sheperd.  If

C64FSHEC

1   this case were to go to trial, how many witnesses from BCBG are

2   there likely to be?  Two?

3               MR. SAVAGE:  I was thinking three or four, probably no

4   more than that.

5               THE COURT:  I mean, I know defendants never like to

6   trust juries if they don't have to, but I suspect it would cost

7   you less to try the case and depending on whether you consent,

8   which is another issue we're going to deal with today, whether

9   you all consent to have the case in front of me or Judge

10  Sullivan, you can certainly get it tried in front of me faster

11  than you'll get a decision on the summary judgment motion.  So

12  that's something you might want to think about.

13              MR. SAVAGE:  We understand.

14              THE COURT:  Okay.  Well, I guess we're going to

15  summary judgment motion route.  It may not be overly

16  successful, but it is what it is and it remains due at the

17  moment July 9.

18              MR. SAVAGE:  Thank you.

19              THE COURT:  Let's go back on the 636(c) question.  If

20  both sides consent, the case can be in front of me for all

21  purposes, meaning my decision on the summary judgment motion

22  would be dispositive, and any jury would have the final word on

23  a trial and direct appeal to the Second Circuit from whichever

24  of those decides the case to the Second Circuit as it would in

25  front of Judge Sullivan.  Are you in a position to make the

C64FSHEC

1    decision today?

2           MR. SAVAGE:  I think we are, Judge.  With all respect,

3    your Honor, I think we will leave things as they are with Judge

4    Sullivan as the district judge with responsibility for the

5    case.

6           THE COURT:  That means your vote -- doesn't mean your

7    vote doesn't count, but whether there are two no's, or one no

8    and one yes, under the Constitution it means it goes back to

9    Judge Sullivan.  For me it means that I make a report and

10   recommendation on the motion and whatever I do on that is

11   reviewable by Judge Sullivan.

12          Okay, so, now, the issue you haven't raised and

13   perhaps because you were waiting for Ms. Sheperd to raise it

14   and the reason I held off anything about your May 31 letter is

15   I got on the, I don't know, fax or e-mail, but you sent e-mail

16   to my secretary late, 11:00 p.m. or so last night, a document

17   demand which apparently has been served on the defendants.

18   Have you received that, Mr. Savage?

19          MR. SAVAGE:  Yes.  I received it about 11:30 last

20   night and we wrote to Ms. Sheperd about it this morning.

21          THE COURT:  And what did you say?

22          MR. SAVAGE:  I said, and we have a copy for your Honor

23   if the Court wants to see it, we said that the discovery cutoff

24   of June 14 has been in place since March 1.  We served

25   discovery notices on March 2 which had 30-day notices in them

C64FSHEC

so Ms. Sheperd certainly saw that.  We were here about 27 days
ago and on page 18 of the transcript, your Honor, was about as
clear as could be that if Ms. Sheperd wanted to serve any
discovery notices they had to be served by May 14 in order to
provide us with the time to which we are entitled by the
Federal Rules.

          May 14 came and went.  Indeed, the month of May came
and went with nothing, and then we receive not only any
document request but a fairly extensive document request on
Sunday night, which really means Monday.  It's ten days before
the discovery cutoff.  We didn't tell Ms. Sheperd not to serve
them until now.  It's our position that we are not required to
and should not be required to respond to these document
requests.

          THE COURT:  Ms. Sheperd?

          MS. SHEPERD:  Your Honor, the last time we were here,
I don't think -- I think it was the 13th of last month.

          THE COURT:  May 8.

          MS. SHEPERD:  I was advised by the Court to redo my
interrogatories and be more specific.  That's what I focused
on --

          THE COURT:  And you were given a date to do it by.

          MS. SHEPERD:  Correct, which was the 15th, I believe.

          THE COURT:  Correct.

          MS. SHEPERD:  So that's what I did.  I completely -- I

C64FSHEC

don't want to -- I didn't realize that I had to give them my

document request by May 14th as well, until I read the

transcript, which I received on May 25th.

        THE COURT:  You were here when I told you about the

30-day requirement and that you had to get all your document

requests -- all your discovery requests in 30 days in advance

of the June 14th cutoff, but that I gave you the extra day or

whatever to get it to May 15th because that was the same day we

were making your revised 26A disclosures due.  You know,

ignorance, if there were something minor, just "give me my

personnel file," I would say yes.  But this is 48 requests

cannot possibly be done in ten days.  I'm not even sure it can

be done in 30, and I gave you all plenty of warnings that I was

not going to extend the discovery cutoff date.

        MS. SHEPERD:  Okay.  So I would assume that then do I

need to answer their additional requests, then?  Because I

should have 30 days --

        THE COURT:  Anything that is new, and that's why I

wanted to consider these together, and whether it's something,

you know, that you didn't think of, Mr. Savage, and couldn't

possibly know or anything else, it's going to have to be

relatively uniform ruling on both sides.  Anything that you

asked for in your prior requests and that because of whatever

reason you didn't get and now you're renewing the request for

that's one thing.  Anything from the May 31 letter --

C64FSHEC

1          MR. SAVAGE:  Well, the May 31 letter, your Honor, all

2     comes out of the depositions.  These are materials that we had

3     no way of knowing until Ms. Sheperd actually testified.

4          THE COURT:  You should have taken the deposition

5     earlier.

6          MR. SAVAGE:  We couldn't, Judge.  We couldn't take it

7     much earlier because Ms. Sheperd didn't give us her discovery

8     responses until well after they were due.  Yes, within the

9     second deadline that your Honor gave us.

10         THE COURT:  There are two choices.  That's why I was

11    tying these together.  To make my life miserable in one way and

12    easier in another by saying we'll extend the discovery cutoff

13    30 days or whatever it is so that both sides requests could be

14    dealt with, or as far as I'm concerned it is what it is.

15         MR. SAVAGE:  Our view, your Honor, is that there is

16    nothing that is new in the May 31 letter because it all expands

17    on or comes from --

18         THE COURT:  All right, then you've got to give me a

19    copy of your prior document requests.

20         MR. SAVAGE:  We'll submit that by fax tomorrow

21    morning.

22         THE COURT:  I was hoping you would have it with you

23    now.

24         MR. SAVAGE:  I don't have it with me.  We can --

25         THE COURT:  You know --

C64FSHEC

1          MR. SAVAGE:  Judge, can I have it faxed down here now

2     if I can get to a telephone.

3          THE COURT:  It's 3:30.  I have other cases this

4     afternoon.  Is there anything that's going to make or break

5     your case here?

6          MR. SAVAGE:  If I could just take a look at the

7     letter.

8          THE COURT:  Otherwise, I think we're just going to say

9     you got enough, let's move on and let's get this case to motion

10    practice.

11         MR. SAVAGE:  Well, certainly, there are a couple of

12    things that I think were included in the request.  Item 4 is

13    all e-mails and documents which refer to your working at BCBG

14    Max Azria alleged in the complaint to the lawsuit efforts to

15    obtain work.  Not that Ms. Sheperd may have and I understand

16    believed this just concerned correspondence between she and

17    BCBG personnel.

18         THE COURT:  Stop a minute.  Is there any other such

19    documents?  Did you write to friends, relatives, whatever,

20    about your work at BCBG?

21         MS. SHEPERD:  It's very possible, your Honor.

22         THE COURT:  And do you still have those e-mails?

23         MS. SHEPERD:  It's possible.  I would have to -- I

24    thought it was only correspondence with BCBG employees.

25         THE COURT:  All right, then that you've got to look

C64FSHEC

1   for.  What else?

2              MR. SAVAGE:  Same thing about text messages with same

3   requests.

4              THE COURT:  Do you have the text messages?

5              MS. SHEPERD:  No.

6              THE COURT:  That answers that.

7              MR. SAVAGE:  Complete tax returns.  We got the first

8   pages.

9              THE COURT:  You're not entitled to them.  I'm denying

10  that request.

11             MR. SAVAGE:  Number 6 and 7, further communications

12  between the plaintiff and Ms. Macias, to the extent those

13  exist.

14             THE COURT:  So this would be something coming from

15  Ms. Mecias?  You guys obviously have that.

16             MR. SAVAGE:  Number 10, the journal that Ms. Sheperd

17  testified in which she kept notes relating to her employment

18  with the company and events related to her allegations of

19  discrimination.

20             THE COURT:  And you're representing to me this was

21  covered by your prior requests?

22             MR. SAVAGE:  When we asked for all documents

23  pertaining to any aspects of the discrimination claim.

24             MS. SHEPERD:  Which I provided.  Now he says he wants

25  the entire journal.

C64FSHEC

1          THE COURT:  So you took out of the journal the pages

2     that were relevant?

3          MS. SHEPERD:  Exactly.

4          THE COURT:  That's sufficient.

5          MR. SAVAGE:  There were a series of typewritten notes

6     which we marked as Exhibit LS51 and part of it was cut off.  We

7     asked the plaintiff to produce a complete and cleaner copy.

8          MS. SHEPERD:  He had the copy when he gave it to me in

9     his exhibit.

10         THE COURT:  Apparently the copy he has has things cut

11    off.  Just check your original against the copy that was marked

12    at the deposition.  If that's the best copy there is, sobeit.

13    If you happen to have a better copy, just make a clean Xerox of

14    it and send it over.

15         MR. SAVAGE:  That's all we ask.  And number 13, which

16    concerns Ms. Sheperd's trip to California in May 2009 when she

17    was a BCBG employee.  We have questions about that trip and

18    when and how it was arranged and we'd like to see proof of when

19    the contingent were purchased, how they were purchased, things

20    of that nature.

21         THE COURT:  This was requested previously?

22         MS. SHEPERD:  No, it was not.

23         MR. SAVAGE:  It was not, because it came up at her

24    deposition.

25         THE COURT:  The request is denied.  Okay?  And if I

C64FSHEC

wasn't clear, Ms. Sheperd's requests dated June 3 is denied in

its entirety as being too late.

            MR. SAVAGE:  That's how we understood it, Judge.

            THE COURT:  Settlement?  Any chance we can settle this

case?

            MR. SAVAGE:  As we discussed before, I'm prepared to

listen to a demand, and just so Ms. Sheperd is clear any

settlement discussions are offered, they can't be used by

either side against either one, to prove, oh, you must feel

you're guilty that's why you offered me money or anything like

that.  So I'm prepared to listen.  We really haven't received a

settlement demand yet.  We have the $10 million request in the

interrogatory answer.  I think there's been some change in

that, but a settlement demand which is not capitulation, we

haven't received that, but I'm happy to talk about it with the

company once I get something from Ms. Sheperd.

            THE COURT:  Ms. Sheperd, do you want to talk

settlement now or not?

            MS. SHEPERD:  No.

            THE COURT:  Okay.  Then we're going to motion

practice.  Okay, the motion is due July 9.  The usual rules are

two weeks for opposition, one week for reply.  But if you think

you need a little more time, Ms. Sheperd, even before you see

their papers, I'd be willing to give you a little more time.

What's your pleasure?  Do you want three weeks instead of two?

C64FSHEC

1              MS. SHEPERD:  Please.

2              THE COURT:  Opposition due July 30 and that would make

3     the reply due August 6.  You want another day or two?

4              MR. SAVAGE:  Yes, I would.  If the Court is going to

5     extend Ms. Sheperd's time, which I'm totally fine with, then

6     I'd like some extra time on mine.  I don't know when

7     August 6 --

8              THE COURT:  The 6th is a Monday, I'll give you

9     Wednesday, the 8th.

10             MR. SAVAGE:  Fair enough.  Thank you, Judge.

11             THE COURT:  I remind both sides in addition to filing

12    your papers officially on the ECF system you need to send me a

13    paper courtesy copy.

14             MR. SAVAGE:  Understood.

15             THE COURT:  Okay.

16             MR. SAVAGE:  Thank you, your Honor.

17             MS. SHEPERD:  Your Honor, may I ask a question?  You

18    mentioned that I wasn't supposed to provide tax information.

19             THE COURT:  Correct.

20             MS. SHEPERD:  But I already provided the information.

21             THE COURT:  Whatever you provided, you provided.  I'm

22    just not making you provide anything else.

23             MS. SHEPERD:  But going forward if someone were to ask

24    me for that I didn't have to provide it?

25             THE COURT:  There are standards in the case law to

C64FSHEC

1    when it's appropriate, when it's not appropriate.  In general

2    it depends on the allegations in the case and at a minimum

3    you've got to provide any time you're claiming lost income

4    sufficient either W-2's, 1099's and/or the line on the tax form

5    that shows what your income is.  The other pages of investment

6    income or charitable donations or any of that is almost never

7    relevant, but that's a generality.

8            All right, I'm going to direct you, Mr. Savage, to

9    purchase the transcript.

10           MR. SAVAGE:  Just like we did last time and we'll

11   happily do it again.

12           THE COURT:  Provide a copy to Ms. Sheperd as soon as

13   you can.  It may take 30 days, Ms. Sheperd, but whenever

14   defense counsel gets it, they will send it to you.  If you want

15   it faster than that, you're free to buy it from the court

16   reporter yourself.  Otherwise you get a freebie, but I can't

17   order him.  I can, but I'm not ordering anything other than the

18   normal 30-day delivery.  If defendants want it faster for some

19   reason then you'll get it faster, too.  Otherwise normal

20   delivery.

21           All right.  And technically you need to answer the

22   counterclaim, so consider that served on you as of today or

23   tomorrow and I assume your answer is going to be just a denial

24   or whatever else you want to say, but put that in writing just

25   like they had to answer the complaint.  You need to answer not

C64FSHEC

1    the affirmative defense and other things, but just part of

2    their amended answer that is denominated the counterclaim.

3              MS. SHEPERD:  And is there a date that I have to have

4    that to them by?

5              THE COURT:  I think the rule is ten days.

6              MR. SAVAGE:  That sounds right to me, Judge.  Far be

7    it from me to tell the judge --

8              THE COURT:  We're closing discovery July 15th,

9    although technically we've closed it as of now.  I don't see

10   any reason you can't get it done by June 14, so that will be

11   your deadline.  Okay, we are adjourned.

12             MR. SAVAGE:  Thank you, your Honor.

13             (Adjourned)

14

15

16

17

18

19

20

21

22

23

24

25